A. D. GWYNNE, Administrator of S. D. Mangum, deceased, *v.* Z. W. ESTES *et al.*

1. ADMINISTRATION. *Insolvent estate. Insurance policy.* Mangum being indebted to Stewart, Gwynne & Co., took out a policy of insurance on his life, S., G. & Co. paying premiums and charging up to M. The policy was payable on its face "to Stewart, Gwynne & Co., creditors of the insured, as their interest may appear, the balance, if any, to Kate Mangum, the wife of said insured." Mangum died insolvent, owing S., G. & Co. more than the amount of policy. *Held,* that the amount of indebtedness due S., G. & Co. must be credited with amount of policy and balance filed for *pro rata* of estate.

2. HUSBAND AND WIFE. *Wife dowable. When:* Husband and wife executed a deed of trust on certain lots, wife expressly releasing homestead and dower. The trust provided if any surplus it should be paid husband. They afterwards executed another deed of trust, which, however, on account of defects, was invalid as to wife. *Held,* that wife, upon death of her husband, was dowable out of surplus, after satisfying first trust deed.

3. REGISTRATION. *Deed of trust.* A deed of trust is operative against other creditors, though not registered until after the death of debtor The deed, upon registration, relates back to its date.

4. PARTNERSHIP. *Dissolution. Duty of administrator of deceased partner.* Upon the dissolution of a firm by death, it is the duty of the surviving partner to apply assets to the payment of the debts. Upon the death of a partner, it is the imperative duty of his personal representative to insist upon a due application of the joint effects to the discharge of the joint debts.

FROM SHELBY.

Appeal from the Chancery Court at Memphis. W. W. McDowell, Ch.

J. M. GREGORY for complainant.

METCALF & WALKER, HUMES & POSTON, GEORGE. GILLHAM and WRIGHT & FOLKES for defendants.

FREEMAN, J., delivered the opinion of the court.

This is an insolvent administration in the chancery court at Memphis.

A number of questions are presented for adjudication arising between the administrator, Gwynne, the widow and creditors, and perhaps between the creditors themselves. We will briefly state the facts on which each question is raised as we proceed:

Mangum died September, 1878. He had been a merchant in Collierville, near to the city of Memphis, and had also another establishment at another village hard by, conducted under the style of Granberry & Co., his brother-in-law, Granberry, an infant under twenty-one years of age, having purchased one-half of said stock, giving his promissory note for $1,125 for the same.

The firm of Stewart, Gwynne & Co., of Memphis, were the commission merchants for Mangum, and he had become largely indebted to them. About May, 1878, in order to secure said Stewart, Gwynne & Co., in addition to deeds of trust to be noticed hereafter, it was agreed that Mangum should take out a policy of insurance on his life, Stewart, Gwynne & Co. paying the premiums, and charging them up to Mangum on his account. Said policy was on its face payable " to Stewart, Gwynne & Co., creditors of the said insured as their interest may appear, the balance, *if any*, to Kate Mangum, the wife of said insured," etc.

At his death Mangum was indebted to the firm over $14,000. When the policy became payable, Mrs.

Mangum, under advice of counsel we take it, possibly by collusion with the firm, notified Stewart, Gwynne & Co. not to collect the money and apply it to the payment of their debt, but insisted they must get their *pro rata* from the estate of S. D. Mangum, and then apply the proceeds of the policy to the balance of the debt, and pay her any surplus that might remain. However, the money was collected by agreement between the parties before administration had, the firm and widow going on the receipt. The agreement was that A. D. Gwynne, the now administrator, should hold the money as trustee until the rights of the parties were settled. He immediately deposited the same with his firm, and so the firm has practically been in receipt of the benefit of this sum from then until now.

The question now presented is, whether this contention, nominally on the part of the widow, but in fact, as earnestly pressed by Stewart, Gwynne & Co. as by her, is the right of the parties. Both the widow and Stewart, Gwynne & Co., are interested in sustaining this theory, for as matters have turned out, on this view, Stewart, Gwynne & Co. will get their entire debt paid, and leave a considerable surplus, possibly four or five thousand dollars, for the widow. On the other theory, that the proceeds of the policy shall be first applied to the payment on their debt, and then they be compelled to receive a *pro rata* on balance, several thousand dollars will be unpaid and lost by the firm. They evidently have worked very earnestly in conjunction with Mrs. Mangum in order to sustain the theory agreed on.

Arguments of great ingenuity are pressed on our consideration in favor of the contention of these parties. It is urged that the provision of our Code, (sec. 3135, new Code; 2294, T. & S.), providing that "a life insurance effected by the husband on his own life shall inure to the benefit of the widow and next of kin, to be distributed as personal property, free from the claims of his creditors," shows the controll-ing policy of our State to be that creditors are to be excluded from participation in such a fund, and this gives the wife some sort of an equity in this case. But that is not this case. It is a policy on his life, but is payable first to Stewart, Gwynne & Co. on their debt, and balance, *if any*, is only to go to the wife. Until that debt is satisfied she has no rights whatever under the policy by its very terms. Her right was to ascertain the amount of the debt, have the application made, and if any surplus, to compel its payment. The nature of this transaction, when fully considered, we think will serve to settle the rights of the respective parties more readily than by following the ingenious argument of counsel. A party indebted, agrees with his creditor to purchase or procure a contract of another party to pay him ten thousand dollars on his debt, on the happening of a certain event in the future, should his debt be that amount. If not so much, then he is to pay what is due, and pay the balance remaining to a designated third party. The contingency happens, the money is received, but that third party insists the fund shall not be applied as contracted, but the cred-

itor shall proceed to sue, and exhaust the debtor's estate before applying the money thus contracted to be so applied. What possible ground can there be to sustain such a contention? The application of the money to the payment of the debt is a condition precedent to the right of such third party to any part of it; only the balance, *if any*, after discharge of this debt, is to be paid, is the substantial language of the policy—"*if any*" indicating the condition on which the wife's right to receive any part of it, is to arise. That condition has not arisen, and cannot, if the terms of the contract are carried out and the application of the money made as contracted. She clearly has no right to insist on any thing but the balance after the debt is satisfied. This seems too clear for argument.

We think a fair analysis of the nature of the contract is equally conclusive against the contention of the creditor that he has the right to go upon the general estate, receive an equal *pro rata* of that with other creditors on his entire debt, and then apply the proceeds of the policy to payment of the balance, thus getting his entire debt paid, while other creditors receive only a *pro rata*, lessened by his large debt. We think we have shown the widow had no right to compel him to do so. On what basis can the creditor rest such a claim?

The case is simply this: A debtor provides for the payment of ten thousand dollars to his creditor on the happening of a contingency in the future. When that event happens, the party—the insurer, for

a consideration paid him by the debtor—is to pay absolutely the creditor the sum agreed on by his contract. It is paid promptly on the terms agreed on, but is not applied to the discharge of the debt, ostensibly because a third party who is entitled to any surplus, after the discharge of the creditor's debt, has notified the creditor not to so apply it. That this is a thin pretext is obvious, the real reason being that it happens that if the creditor can get part of his debt paid from another source he will reap an advantage, while others, it is true, may and will lose to the same extent. Is it not a simple question whether the contract of the parties shall be carried out in good faith, or may be disregarded? There is nothing to prevent it being carried out; it is legal and binding, why should it not be enforced?

The error in the argument, based on the idea of a party having two securities for his debt, and entitled to the full benefit of all he has, is in overlooking the plain meaning of the contract under consideration, and in treating the right to prove against the general estate as a technical security. It is a contract for the absolute payment of the ten thousand dollars on this debt, at death of Mangum, if so much should be due. Suppose the debtor had given Stewart, Gwynne & Co. a bill of exchange, accepted by a third party, payable on a contingency, the contingency had happened, and the acceptor had promptly paid on demand, could the creditor then, as against his debtor living, have held the money and sued on the entire claim, and been permitted to recover? Would not a plea

of payment have been sustained as to the amount so received, and only a recovery allowed as to any balance found due. If this would be the result if the debtor were living, how can a different result be reached as against his personal representative after his death?

It is urged this money was not part of the estate of Mangum, therefore did not go to the administrator. That is true, but it did become the money of Stewart, Gwynne & Co. immediately on its receipt, and the right to receive it arose at once to them on Mangum's death, and the contract under which they obtained this right required the application of the money to the payment of their debt. Except for their agreement so to apply it, they would never have obtained the policy at all. In fact, the sole object of the contract was to secure a payment of the amount contracted by the company in discharge of this debt. To refuse to apply it is to subvert the contract of the parties, and allow this to be done to the detriment of others equally meritorious with the creditor seeking to obtain this advantage. In two cases in our State, the creditors, who had a mortgage in one case, 1 Sneed, 351, in the other having a vendor's lien, after realizing on the securities held by them, were held entitled to prove for the balance remaining due. The right to go on the estate and prove for the whole debt was not claimed, it is true, in either of these cases, but the principle is so agreeable to sound justice in even such cases as these as to commend itself to our judgment. In fact, on the

view we have taken of this contract, that the receipt of the money is equivalent to a payment for that amount, the cases are precisely in point, and decide the right of the party to prove only for the balance of his debt.

The principle laid down by this court, in the case of *Parchman* v. *Charlton*, 1 Cold. R., 386–7, is in precise accord with the view we have taken. It is true the case possibly did not call for a direct decision of the question, but it is discussed by the court as to the right of the administrator, and stated thus: "If the property of the intestate, or any portion of it, be subject to a mortgage or otherwise, the incumbrancer should be proceeded against in the appropriate forum, to the end that if, after the discharge of the incumbrance, a surplus should remain, it might be applied to the benefit of the general creditors." After conceding the right of the incumbrancer to waive or surrender his security for the benefit of the estate, and come in on the general estate, but that he was not bound to do so," it is added: "If the security be inadequate to pay his debt, it is his duty to take prompt steps to make his claim for the residue of his debt, and if on the other hand the security be more than sufficient, the personal representative or creditors of the intestate have a plain remedy against him to avail themselves of the surplus." We think this view of the rights of the parties in such case is the true one, and reaches the true end of all law, the justice and right of the case.

The established principle on which courts of equity

proceed in marshaling assets reaches the same result. It is, that a creditor having his choice of two funds ought to exercise his right of election in such manner as not to injure other creditors who can resort to only one of these funds. But if contrary to equity he should so exercise his legal rights as to exhaust the funds to which alone other creditors can resort, then these other creditors will be placed by a court of equity in his situation, so far as he has applied their fund to the satisfaction of his claim: Waite's Act. & Def., vol. 1, 354, citing Alston v. Mumford, 1 Brock., 266, and other cases. The illustrations, among others, given of the application of the principle are, the cases of a specialty creditor, whose debt is a lien on the realty, and of a mortgagee, who shall exhaust or apply the personalty to their debts. The simple contract-creditor in such cases is allowed to stand in their places as to the realty or the mortgage. See cases cited, Waite's Act. and Def., vol. 1, 354–5. The same result in this case is reached by compelling the application of the fund held by the creditor in the first place, as stated by Judge McKinney in the case cited: 1 Cold., 367. This equity is not applied to the detriment of the creditor, so far as his special security is concerned. But when he gets all he has contracted for he cannot complain. See also Parr, Nolen & Co. v. Fumbanks, 11 Lea, 395, and authorities cited.

The next question is, the proper disposition of a surplus arising from the sale of certain town lots under deeds of trust made by Mangum in his life-

time. It appears that in March, 1878, he and his wife executed a deed of trust to D. T. Porter, trustee, for the benefit of the Shelby County Building and Loan Association, to which association Mangum was indebted. The wife joined in this deed, releasing in express terms her dower and homestead in the several lots conveyed, which were situated in the town of Collierville. The validity of this deed of trust is conceded. It provided for sale of the property conveyed by the trustee, and directs the proceeds to be applied first "to the costs of the trust, next to the payment of the debt secured, the residue, if any, to be paid to said S. D. Mangum."

In May, after this, Mangum and wife joined in another deed of trust to C. T. Dobb, conveying the same property for the benefit of Stewart, Gwynne & Co. This deed, it is not denied, is not effective as against Mrs. Mangum, because of fatal defects in the certificate of her privy examination. The last deed of trust was not registered until October 28, 1878, after the death of Mangum.

After the death of Mangum, Porter proceeded to sell all the lots conveyed to him except one, the proceeds realized being $3,250, which, after paying the debt secured to the Building and Loan Association, left a surplus of $1,413.77, which was paid over to Stewart, Gwynne & Co., and applied as a credit on their debt. The lot remaining was afterwards sold under the second deed of trust for $148, which was likewise credited on Mangum's account.

Mrs. Mangum now claims that she was either en-

titled to dower out of the whole proceeds of the lots sold, or out of the surplus of $1,413. As to the first proposition it needs no discussion. She had released her dower by valid instrument, and so had no right to dower, certainly till the purposes of that trust were fulfilled.

A question of more difficulty is as to her right of dower in the surplus. As to the lot unsold under the first deed, and sold under the second, it remaining discharged of the first deed of trust, there is no question. The deed of trust not having been foreclosed in the lifetime of the husband, the wife is entitled to be endowed of one-third of the proceeds: New Code, 3245.

The Referees report that she is not entitled to dower in this surplus of $1,413.77. The argument is, that by the first deed she had released her dower interest in the land, and that deed provided for a sale of the lots, which has been done, and the surplus of money arising from such sale was to be paid over to Mangum, this being personalty, the result of the sale, no dower right could attach to such funds. The last deed of trust, it is true, was inoperative as to the wife, but as the deed only conveyed the right of Mangum, and his interest being only by the deed in the surplus money, it was operative to convey the surplus completely without the need of the wife being party to it, or being bound by it. Mangum had released his equity of redemption in the lots by the first deed for the benefit of the Building and Loan Association. Taking all these facts together, the Ref-

erees conclude he had only an interest in the sur-
plus money reserved under the said deed, therefore
the wife had no right whatever to dower, to which
conclusion she files an exception. The better state-
ment probably of the case is, that the second deed
of trust was a conveyance subject to a former deed
of trust, and subordinate to its provisions only.

On the other hand the widow is dowable in this
State in equitable estate as well as legal: Sec. 3244,
new Code. The husband had the equitable right to
pay off the incumbrance, and thus obtain the legal
title, as in the case of a vendor's lien. Equity has
always treated a mortgage as a simple security for the
debt. In the case of the vendor's lien, and a sale
under it for the payment of the purchase-money, the
widow has always been held dowable in the surplus:
*Williams* v. *Wood*, 1 Hum., 413; 9 Heis., 385. We
think the sounder conclusion is, that the dower was
only released as against the debt secured, and she
is dowable in surplus after the discharge of that in-
cumbrance. Stewart, Gwynne & Co. are entitled only
to apply balance after her dower.

It is next insisted that the second deed of trust
is inoperative as against the other creditors, because
though executed and delivered before the death of
Mangum, it was not registered until afterwards.

We think our decisions have settled the law to be
otherwise, and that on sound principles of construc-
tion of our statutes. In the case of *Fields* v. *Wheat-
ley*, 1 Sneed, it was held: "The statutes regulating
the administration of insolvent estates were not in-

43—VOL. 14.

tended, and could not be construed, to affect in the remotest degree liens acquired in the lifetime of the deceased insolvent. They contemplate only a ratable division of the assets, which, by law, are subject to the satisfaction of the general creditors." In the case of *Winton* v. *Eldridge*, 3 Head, 36 : " These rights continue as if there had been no death and no statutes on the subject, so far as their priority of satisfaction is concerned. The property on which the lien exists goes into the general estate encumbered with the lien debts." In *Kinsey* v. *McDearmon*, 5 Cold., 398–9: "A lien by contract as security to reimburse a surety, though unregistered, was held to have precedence over the general creditors of the estate. This being so, the case is stronger of a lien registered after the death, no creditor having fastened any lien upon the property before registration. The deed relates back to its date."

The question presented as to the liability of the administrator for interest on the assets of the estate deposited by him to his credit as administrator with the mercantile firm of which he is a member, has been settled, after a thorough examination of the authorities, in an opinion at this term, by Cooper, J., in the case of *Cannon* v. *Apperson*, 14 Lea, 553. He will be charged, on the principles of that opinion, with simple interest on the sums received by him, and so deposited, from date of deposit.

On the principle of the same opinion, the facts being similar, the administrator will be allowed half the commissions allowed by the commissioner, that is

five per cent., this to be allowed only as to the creditors excepting, most of them having acquiesced in the allowance made by the court below, and not contesting it.

The question of the allowance of counsel fees of Lehman & Gregory out of the general funds of the estate for filing the cross-bill, in which they raise the question of the claim to the insurance money, representing various creditors of Mangum, and filing them for allowance—the Referees correctly report against the allowance of the fees claimed. It is not the case of a party filing a bill to impound a trust fund, where the fund was imperiled, and was saved to the other beneficiaries by his efforts. They must look to their clients for compensation.

The only remaining question is, whether a debt of Dillard & Coffin shall be paid in full out of the assets of W. H. Granberry & Co., of which firm Mangum was a member.

The case is this: Granberry & Co. owed this debt. Granberry had purchased one-half interest in the stock from Mangum, and had given his promissory note for $1,125 for it. This note came to the hands of Gwynne, as administrator of Mangum. Granberry was a minor. Gwynne, the administrator, took the entire assets and gave Granberry up his note. He claims this was a purchase of the stock and assets by him as administrator, and so we will treat it. The assets amounted to about $2,200, and were returned in the inventory of Gwynne as part of the estate of Mangum.

Upon the dissolution of a firm by death, it is the duty of the surviving partner to apply the assets to the payment of the debts, and for this purpose he may sell to third parties, and they get a good title. Upon death of a partner, his personal representative has the same lien and equity his intestate had to have the assets properly applied, and hence, says Judge Story, "it is not merely his right, but his imperative duty, to insist upon a due application of the joint effects to the discharge of the joint debts, and after that to receive and apply the balance in the proper discharge of his trust": Story on Part., sec. 326, 361; *Bancroft, Beaver & Co.* v. *Snodgrass,* 1 Cold., 441, 442. "This duty," says this court, "the personal representative cannot surrender or forego. It is enjoined by law."

This being so, Gwynne has in violation of this duty received on the debt, or for the debt of $1,125, $2,200 of the firm assets, and brings them into this administration. The only debtor remaining of the firm comes in and asks that so much of the assets as will pay his debt shall be so applied. There being ample to pay this debt, as well as the $1,125, we think it should be applied as prayed for, and it is so adjudged.

This disposes of all matters contested. The report of the Referees will be modified as herein indicated. Stewart, Gwynne & Co. will pay one-half the cost, balance out of the general fund, after paying the claim in full of Dillard & Coffin against Granberry & Co.